UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| KATHLEEN DENNING, | Case No. 3:17-cv-00463-MMD-WGC |
| --- | --- |
| Plaintiff, | ORDER |
| v. | |
| WASHOE COUNTY, a political subdivision of the State of Nevada, | |
| Defendant. | |

**I. SUMMARY**

This case concerns employment discrimination claims brought by an employee of Washoe County Regional Animal Services ("Washoe County" or "Defendant"). Before the Court is Defendant Washoe County's Motion for Summary Judgment ("Motion") (ECF No. 42), and Motion to Exclude Evidence and/or Motion for Disqualification of Counsel ("Disqualification Motion") (ECF No. 56). The Court has reviewed Plaintiff's response to Washoe County's Motion (ECF No. 50) and Washoe County's reply (ECF No. 55). For the reasons discussed below, the Motion is granted.

In addition, the Court has reviewed Plaintiff's response to the Disqualification Motion (ECF No. 57) and Washoe County's reply (ECF No. 58). Because the Court grants summary judgment in favor of Washoe County, Court denies as moot the Disqualification Motion (ECF No. 56).

///

///

///

## II. BACKGROUND

Plaintiff Kathleen Denning filed her initial complaint on January 3, 2017.[1] (ECF No. 1.) She then filed her First Amended Complaint ("FAC") on February 2, 2017. (ECF No. 10.) In relevant part, Denning brings three claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and Rehabilitation Act, 28 U.S.C. § 701 *et seq.*, for discrimination/failure to accommodate, retaliation, and hostile work environment. (*Id.* at 7-10.) The following facts appear without dispute in the summary judgment record.

Plaintiff Denning suffers from epilepsy. (*See* ECF No. 10 ¶ 22.) She was diagnosed with epilepsy in 1998. (*See* ECF No. 50-1 at 7.) She began working as an Animal Control Officer for Washoe County in 2004. (*See* ECF No. 42 at 2.) She still works there. (*See* ECF No. 50-2 at 2.) Plaintiff enjoys a reputation as a good employee amongst her co-workers. (*See, e.g.*, ECF Nos. 50-6, 50-10, 50-13.) As an Animal Control Officer, Plaintiff's duties include responding to calls from the public regarding stray animals, cruel treatment of animals, and animal bites. (*See* ECF No. 50-1 at 5.) One of Plaintiff's supervisors during the time period relevant to the FAC was Robert Smith ("Smith"). (*See, e.g.*, ECF No. 10 ¶¶ 22-23.)

Smith allegedly subjected Plaintiff to a hostile work environment because she is epileptic. (*See id.*) In 2012, Smith told Plaintiff that she should not be an Animal Control Officer because Plaintiff is an epileptic. (*See* ECF No. 50-9 at 1; ECF No. 50-2 at 3.) Plaintiff alleges that, in late 2015, Smith told an Animal Control Supervisor, Jesse Horton, that Plaintiff was "crazy," but never directly called Plaintiff crazy, and Plaintiff never reported the alleged incident to anyone. (ECF No. 50-1 at 23-25.) Jesse Horton does not mention this incident in his declaration. (*See* ECF No. 50-10.) However, at some point in time, Smith told Jesse Horton that Plaintiff "is not your friend," and is a "trouble-maker." (ECF No. 50-10 at 3.) Jana Atkinson, another Washoe County Animal Services employee, heard Smith refer to Plaintiff as a "problem child." (*See* ECF No. 50-8.) It is unclear

---

[1] Plaintiff's case was originally joined with that of John Finnegan, but their cases were severed pursuant to the Court's Order of August 2, 2017 (ECF No. 35). Mr. Finnegan's case remains under Case No. 3:17-cv-00002. This order does not address Mr. Finnegan's case, which the Court will address separately.

specifically when Smith called Plaintiff a "problem child" in Ms. Atkinson's presence. (*See id.*) In December 2013, Smith told another Washoe County Animal Services employee, Robert Wooster, to "keep your distance" from Plaintiff, and not to trust her because she is "out to get you."[2] (ECF No. 50-6 at 2.)

In September of 2015, Washoe County issued Plaintiff a non-disciplinary "Letter of Instruction" for having left the door of a drug locker open after euthanizing a bat. (ECF No. 42-1 at 2.) The drug locker is used to store euthanasia drugs. (*See id.*) This is a violation of Washoe County policy. (*See id.*) This Letter of Instruction did not affect Plaintiff's pay, schedule, or any other aspect of her employment.[3] (*See id.*)

On October 5, 2015, Plaintiff gave Smith a doctor's note and requested a work accommodation—to be taken off the on-call rotation—to allow Plaintiff to adjust to a change in her epilepsy medication. (*See id.* at 2-3.) The on-call rotation refers to Washoe

---

[2] Plaintiff also discusses a May 5, 2014 incident in her response brief where Smith allegedly forced Plaintiff to issue a warning to Former Director of Animal Services Mitch Schneider for leaving his dog in his car while he went into the Animal Services or Humane Society building, though it was allegedly a cool and cloudy day—and the citation was thus allegedly unjustified. (*See, e.g.*, ECF No. 50 at 10.) Washoe County objected to any discussion of this incident in connection with Plaintiff's claims on relevance grounds. (*See, e.g.*, ECF No. 50-14 at 15.) The Court finds that Washoe County's objection is well taken, and declines to include any discussion of the May 5, 2014 incident in this order. The May 5, 2014 incident is not relevant to Plaintiff's claims that she was discriminated against on the basis of her epilepsy and is therefore inadmissible. *See* Fed. R. Evid. 402 ("Irrelevant evidence is inadmissible."). The May 5, 2014 incident may tend to show that Smith had an antagonistic relationship with Mr. Schneider and may have abused his authority by requiring Plaintiff to cite Mr. Schneider. The incident may then, in turn, be inferred to have contributed to animosity between Smith and Plaintiff because Plaintiff disagreed with the citation. However, none of this speculation has any tendency to make any fact relevant to Plaintiff's claims more or less probable. *See* Fed. R. Evid. 401(a). If anything, the May 5, 2014 incident provides an alternative explanation for the alleged animosity between Smith and Plaintiff that is entirely unrelated to her alleged disability—that their personalities clashed and Smith was perhaps a capricious supervisor.

[3] In addition, Plaintiff discusses another alleged adverse employment action in her response—Smith telling others not to assign her to calls involving horses, and generally to not assign her investigations. (*See, e.g.*, ECF No. 50 at 5.) Field Supervisor Robert Wooster states he received this instruction from Smith in December, 2013. (*See* ECF No. 50-6 at 2.) Field Supervisor Diana Monroe does not specify when she received this instruction. (*See* ECF No. 50-5 at 2.) The Court declines to consider this evidence because it is time-barred per the Court's prior Order (ECF No. 35). Moreover, this evidence appears to be hearsay and is therefore inadmissible. *See* Fed. R. Evid. 802. These statements offered by third parties as to what Smith told them appear to be offered for their truth—that Smith took prior adverse employment actions against Plaintiff—rendering them inadmissible. *See* Fed. R. Evid. 801, 802. None of the exceptions or exemptions to the rule against hearsay appear to apply.

County's practice of having Animal Services Officers be available to respond to after-hours emergency calls between 10 p.m. and 8 a.m. (*See id.* at 3.) Shyanne Schull, Director of Washoe County's Regional Animal Services Department, submitted the doctor's note provided by Plaintiff to Washoe County's HR department and set a meeting for October 9, 2015, to discuss Plaintiff's request for an accommodation with Plaintiff and representatives from Washoe County's HR department. (*See id.*) That meeting occurred on October 9, 2015. (*See id.*) Ms. Schull granted Plaintiff's request for an accommodation at that meeting, took her off of the on-call rotation for 90 days, and issued a letter to Plaintiff on October 12, 2015, to that effect. (*See id.*) Plaintiff was not required to work the on-call rotation for the following ninety days, and has not requested an accommodation since that time. (*See id.*) Washoe County concedes that this request for a reasonable accommodation was a protected activity. (*See* ECF No. 42 at 7.)

Plaintiff filed charges with the Nevada Equal Rights Commission ("NERC") and the Equal Employment Opportunity Commission ("EEOC") on April 5, 2016. (ECF No. 42 at 3.) Washoe County concedes that this was also a protected activity. (*See* ECF No. 42 at 7.)

This Court issued an August 2, 2017 Order ("the Order") (ECF No. 35) stating that, with respect to Plaintiff's failure to accommodate and retaliation causes of action, the Court will only consider facts concerning acts of discrimination that occurred between October 1, 2015, (the onset date Plaintiff stated in her EEOC charge) and January 3, 2017, (the date Plaintiff filed her original complaint).[4] (*See* ECF No. 35 at 6 n.4, 9-10.) This Order is binding on the parties with respect to this case.

---

[4]The Court will not, and cannot, consider Plaintiff's alleged earlier request for a reasonable accommodation from February 2015 raised for the first time in Plaintiff's response to Washoe County's Motion (ECF No. 50 at 28-29), for at least several alternative reasons. First, the Court's earlier Order (ECF No. 35) stated that any alleged discrimination that occurred before October 2015 is time-barred. Second, Plaintiff attempts to establish the existence of her alleged earlier request using emails not produced during discovery in violation of Fed. R. Civ. P. 26(e)(1)(A), which is improper. Third, Plaintiff stated at her deposition that she did not ask Washoe County for any other accommodations prior to, or after, October 2015. (*See* ECF No. 42-3 at 10, 13; ECF No.

4

## III. LEGAL STANDARD

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric., 18 F.3d 1468*, 1471 (9th Cir. 1994). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *See id.* at 250-51. "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968)). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *See Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

The moving party bears the burden of showing that there are no genuine issues of material fact. *See Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible

---

50-1 at 10, 13.) Plaintiff cannot offer her own declaration to contradict her deposition testimony in an attempt to create a genuine issue of material fact. *See Wang v. Sony Pictures Entm't, Inc.*, 721 F. App'x 634, 636 (9th Cir. 2018) (quoting *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 267 (9th Cir. 1991) ("courts may exclude 'testimony that flatly contradicts earlier testimony in an attempt to 'create' an issue of fact and avoid summary judgment'")).

5

discovery material, to show that the dispute exists," *Bhan v. NME Hosps.*, Inc., 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 783 (9th Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

## IV. DISCUSSION

Three of Plaintiff's claims remained following the Order (ECF No. 35), which granted in part Washoe County's Motion to Dismiss: (1) failure to accommodate; (2) retaliation; and (3) hostile work environment. (*See generally* ECF No. 35.) Washoe County moved for summary judgment as to all three of Plaintiff's remaining claims. (*See* ECF No. 42.) The Court addresses below Washoe County's Motion with respect to each of Plaintiff's three remaining claims.

### A. Failure to Accommodate Claim

Assuming without deciding that Plaintiff is a qualified individual with a disability in light of her epilepsy, the Court finds that Plaintiff's failure to accommodate claim fails because the admissible evidence presented by Washoe County establishes that Washoe County granted Plaintiff's only request for an accommodation—at least the only request that is not time-barred pursuant to the Court's Order. (*See* ECF No. 35 at 6 n.4.) "The ADA definition of discrimination includes 'not making reasonable accommodations to the known physical and mental limitations of an otherwise qualified individual with a disability . . . unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity.'" *McAlindin v. County of San Diego*, 192 F.3d 1226, 1236 (9th Cir. 1999), *opinion amended on denial of reh'g*, 201 F.3d 1211 (9th Cir. 2000) (citing 42 U.S.C. § 12112(b)(5)(A)). Modified work schedules such as the schedule requested and obtained by Plaintiff here in October 2015 are an example of a reasonable accommodation. *See* 42 U.S.C. § 12111(9)(B).

However, where, as here, Plaintiff concedes that she was granted the only accommodation she requested that is not time-barred, her failure to accommodate claim must fail. Plaintiff testified in her deposition that she was granted the only accommodation she ever requested based on her alleged disability in October 2015. (*See* ECF No. 42-3 at 10, 13; ECF No. 50-1 at 10, 13.) Further, Plaintiff cites no admissible evidence to the contrary in her response to Washoe County's Motion with respect to her failure to accommodate argument.[5] (*See* ECF No. 50 at 28-29.) Therefore, Washoe County's Motion is granted with respect to Plaintiff's failure to accommodate claim.

### B. Retaliation Claim

Similarly, Plaintiff's retaliation claim suffers from an incurable defect of chronology that negates the requisite causation element of her *prima facie* claim. To prevail on a retaliation claim, a plaintiff must first establish a *prima facie* case of retaliation by demonstrating: (1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) there is a causal link between the protected activity and the adverse employment action. *See Dawson v. Entek*, 630 F.3d 928, 936 (9th Cir. 2011).[6] "Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013).

Here, Plaintiff contends—and Washoe County concedes—that she engaged in two protected activities: (1) requesting an accommodation on October 5, 2015; and (2) filing a complaint with NERC/EEOC in April 2016. (*See* ECF No. 42 at 7-8.) The only adverse employment action that Plaintiff supports with admissible, non-time-barred evidence is her receipt of the Letter of Instruction in September 2015.[7] (*See* ECF No. 50 at 28-29.) The Court is not persuaded that Plaintiff's receipt of the Letter of Instruction constitutes

---

[5]*See supra* note 4 (stating that the Court will not consider the alleged earlier request for accommodation in February 2015).

[6]The Court utilizes the legal framework of a retaliation claim under Title VII for its analysis here. *See Brown v. City of Tucson*, 336 F.3d 1181, 1186-87 (9th Cir. 2003) (stating that courts in the Ninth Circuit have adopted the Title VII retaliation framework for ADA retaliation claims).

[7]*See also supra* notes 3, 4.

7

an adverse employment action, as it was non-disciplinary in nature and did not affect the terms and conditions of Plaintiff's employment. (*See* ECF No. 42-1 at 2.) However, even if the Court were to agree that Plaintiff's receipt of the Letter of Instruction constituted an adverse employment action, it preceded the first of two protected activities Plaintiff engaged in by approximately a month. Therefore, Plaintiff's protected activity of requesting an accommodation on October 5, 2015, cannot be the cause of her receipt of the Letter of Instruction. As such, the Court also grants Washoe County's Motion with respect to Plaintiff's retaliation claim.

### C. Hostile Work Environment Claim

Washe County also contends that Plaintiff has failed to present evidence of a hostile work environment under the ADA. (ECF No. 42 at 11.) In the alternative, Washoe County contends that, if Smith called Plaintiff "crazy," that is merely an offensive utterance that does not necessarily implicate a disability. (*See id.* at 11-12.) Further, Washoe County contends that Plaintiff presents no evidence that Smith's actions unreasonably interfered with her work performance. (*See id.*) Plaintiff responds that Smith articulated his discriminatory attitude that epileptics are not fit to serve as Animal Control Officers in 2012; Smith's statements to others about Plaintiff since that time were intended to ostracize and encourage others to shun Plaintiff; and Smith's statements to others regarding Plaintiff were motivated by a discriminatory animus against epileptics. (*See* ECF No. 13-16.) The Court agrees with Washoe County in pertinent part.

To sufficiently allege a claim for hostile work environment,[8] a plaintiff must show that the "workplace [was] permeated with discriminatory intimidation . . . that [was] sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *Brooks v. City of San Mateo*, 229 F.3d 917, 923 (9th Cir. 2000) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)) (internal quotation marks omitted). "The working environment must both subjectively and objectively be

---

[8]Because the Ninth Circuit has implicitly found that a hostile work environment claim exists under the ADA, *see Brown*, 336 F.3d at 1189-90, the Court also utilizes the legal framework of a hostile work environment claim under Title VII for its analysis here.

perceived as abusive." *Fuller v. City of Oakland*, 47 F.3d 1522, 1527 (9th Cir. 1995). Relevant to the inquiry is the frequency, severity, and level of interference with work performance; however, the court must use a totality of the circumstances test to determine whether a plaintiff's allegations state a colorable claim. *See Brooks*, 229 F.3d at 923-24 (citing *Harris*, 510 U.S. at 23). "When assessing the objective portion of a plaintiff's claim, we assume the perspective of the reasonable victim." *Id.* at 924 (citing *Ellison v. Brady*, 924 F.2d 872, 879 (9th Cir. 1991)).

The parties dispute whether Plaintiff's hostile work environment claim is time-barred. (*See* ECF No. 42 at 10-11; ECF No. 50 at 12.) The Court assumes without deciding that Plaintiff's hostile work environment claim is not time-barred. (*See also* ECF No. 35 at 7-8 (declining to impose time bar on Plaintiff's hostile work environment claim).) Further assuming that the most recent instance of harassment by Smith against Plaintiff falls within the relevant time period, the next question is whether all the alleged instances of harassment together form one unlawful employment practice. A series of non-discrete acts that form one unlawful employment practice can serve as the basis of a hostile work environment claim even if some of the non-discrete acts occurred outside the relevant time period. *See Porter v. Cal. Dep't of Corr.*, 419 F.3d 885, 893 (9th Cir. 2005). "[T]o determine whether all of these events constitute 'one unlawful employment practice,' we consider whether they were 'sufficiently severe or pervasive,' and whether the earlier and later events amounted to 'the same type of employment actions, occurred relatively frequently, [or] were perpetrated by the same managers.'" *Id.* (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 118 (2002)). Here, all of Plaintiff's alleged instances of harassment are attributable to Smith, and therefore could form one employment practice.

However, all of Smith's statements to others regarding Plaintiff are not sufficiently severe or pervasive to give rise to Title VII liability even if they form one unlawful employment practice. "To determine whether conduct was sufficiently severe or pervasive to violate Title VII, we look at 'all the circumstances, including the frequency of the

discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Vasquez v. County of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003), *as amended* (Jan. 2, 2004) (quoting *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 270–71 (2001)). "The required level of severity or seriousness 'varies inversely with the pervasiveness or frequency of the conduct.'" *Nichols v. Azteca Rest. Enters., Inc.*, 256 F.3d 864, 872 (9th Cir. 2001) (quoting *Ellison v. Brady*, 924 F.2d 872, 878 (9th Cir. 1991)).

First, Smith's comments about Plaintiff are insufficiently severe. Based on the record before the Court, Smith told Plaintiff she should not be an Animal Control Officer in 2012 because she is an epileptic. (*See* ECF No. 50-9 at 1; ECF No. 50-2 at 3.) Then Smith told others that Plaintiff was "crazy," a 'problem child,' a "trouble-maker," and warned others to 'stay away from her,' and 'she is not your friend' somewhere between 2012 and 2015. (*See* ECF Nos. 50-1 at 23-25; 50-10 at 3; 50-8; 50-6 at 2.) These comments are less severe than the comments found to be insufficiently severe to support a hostile work environment claim in *Kortan v. Cal. Youth Auth.*, 217 F.3d 1104, 1108, 1111 (9th Cir. 2000) (finding that harassment was not severe or pervasive when the female plaintiff's supervisor referred to females as "castrating bitches," "Madonnas," or "Regina" in front of plaintiff on several occasions and directly called plaintiff "Medea."). Smith's alleged statements do not include expletives and are not as clearly connected to Plaintiff's protected characteristics (as an epileptic) as the plaintiff in *Kortan* (who was a woman). With the exception of calling Plaintiff "crazy," Smith's other statements about Plaintiff cannot reasonably relate to Plaintiff's epilepsy—they appear to relate more to Smith's perception of her personality. Regarding the "crazy" statement, even there the connection between the word and Plaintiff's epilepsy is tenuous at best, and any connection between the two has not been established by any evidence presented by either party.

///

|   |   |
|---|---|
| 1 | Further, the length of time between Smith's comments tends to show that his |
| 2 | allegedly harassing conduct was not pervasive. *See Vasquez*, 349 F.3d at 643 (finding |
| 3 | that statements to plaintiff by plaintiff's supervisor that plaintiff had "a typical Hispanic |
| 4 | macho attitude," and he should transfer to the field because "Hispanics do good in the |
| 5 | field" were not severe or pervasive enough to violate Title VII in part because the |
| 6 | statements were made more than six months apart). In 2012, Smith told Plaintiff that she |
| 7 | should not be an Animal Control Officer because Plaintiff is an epileptic. (*See* ECF No. |
| 8 | 50-9 at 1; ECF No. 50-2 at 3.) Plaintiff alleges that, in late 2015, Smith told an Animal |
| 9 | Control Supervisor, Jesse Horton, that Plaintiff was "crazy," but never directly called |
| 10 | Plaintiff crazy, and Plaintiff never reported the alleged incident to anyone. (ECF No. 50-1 |
| 11 | at 23-25.) Jesse Horton does not mention this incident in his declaration. (*See* ECF No. |
| 12 | 50-10.) The other statements that Smith made to others—which do not appear to |
| 13 | implicate Plaintiff's epilepsy as directly—were spread out somewhere between 2012 and |
| 14 | 2015. Thus, even assuming that Smith called Plaintiff "crazy" to ridicule her epilepsy, |
| 15 | approximately three years elapsed between the two statements—a significant length of |
| 16 | time that weighs against finding that Smith's comments were pervasive. *See Vasquez*, |
| 17 | 349 F.3d at 643 (finding that six months was too long). |

Further discussion:

18. While Smith's alleged comments to others about Plaintiff are hurtful and mean-
19. spirited, they are insufficiently severe and pervasive to impose liability on Washoe County
20. on her hostile work environment claim based on her alleged disability. *See Oncale v.*
21. *Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998) (stating that Title VII is not a
22. general civility code). Therefore, the Court also grants Washoe County's Motion with
23. respect to Plaintiff's hostile work environment claim.

**V. CONCLUSION**

25. The Court notes that the parties made several arguments and cited to several
26. cases not discussed above. The Court has reviewed these arguments and cases and
27. determines that they do not warrant discussion as they do not affect the outcome of
28. Washoe County's motions.

11

It is therefore ordered that Washoe County's Motion for Summary Judgment (ECF No. 42) is granted.

It is further ordered that Washoe County's Motion to Exclude Evidence and/or Motion for Disqualification of Counsel (ECF No. 56) is denied as moot.

The Clerk of Court is instructed to enter judgment in Washoe County's favor and close this case.

DATED THIS 7th day of September 2018.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE